

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00731-CR

Loretta **STRACHE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 370016
Honorable Genie Wright, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  May 29, 2013

AFFIRMED

Loretta Strache appeals her conviction for misdemeanor assault-bodily injury-married. In one issue on appeal, Strache contends the trial court erred in excluding evidence of the victim's post-traumatic stress disorder (PTSD) in support of her self-defense claim. We affirm.

### EVIDENCE AT TRIAL

At trial, Strache's husband, Walter Strache, testified that he, Strache, and his two young sons were at home when he approached Strache in the kitchen and asked her if she knew where the remote control was. According to Walter, Strache then attacked him, hitting him in the face

and other areas of his body. Walter testified that in response to her attack, he restrained her on the ground and then released her. He then told his sons to go to the neighbor's house. According to Walter, Strache then hit him again, so he restrained her again. He then let her go and walked out the front door. Walter testified that Strache continued to hit him, so he restrained her again outside. He then let her go and went to the neighbor's house. When the police eventually arrived, Walter told the officers what had happened. The officers then arrested Strache. Walter testified that this incident was the fourth time Strache had attacked him.

Strache testified in her own defense at trial. According to Strache, on the day of the incident, she was at home when Walter burst open the door and began yelling. Strache testified that she was afraid Walter might hurt her because, in her experience, when he is really mad, he explodes. And, according to Strache, if Walter explodes, he gets violent or says something violent. Strache testified that she had been in similar situations with him two other times that year. According to Strache, Walter had been diagnosed with PTSD five years ago.

Strache testified that Walter approached her as she was in the kitchen and asked her where the remote control was. Strache replied that she did not know. According to Strache, based on her past experiences with Walter, she was afraid he might kill her. She testified that Walter had a remote control in his hand. He hit her with the remote control and then put it down. Strache testified that seeing her two boys standing behind Walter, she feared for her life and for her boys' lives. Strache then walked by Walter to try to get out of the house. Strache testified that she again felt like Walter was going to kill her. So, she defended herself by punching Walter in the nose. According to Strache, Walter threw her down on the floor and held her down. She told her boys to run to the neighbor's house and tell the neighbor to call the police. Strache testified that she then struggled free and ran out of the house. However, Walter followed her, again grabbed her, and pushed her down. Strache testified that Walter let her go when the neighbor got there.

Strache testified that in the past, when Walter had these episodes, he would turn into a different man. According to Strache, Walter was like somebody who was at war fending for his life. She testified that his behavior scared her, but because they had been to counseling, she had learned to deal with it. Strache testified that there had been an earlier incident that year during Easter. Strache testified that Walter had seemed moody, and when she asked him what was wrong, Walter grabbed her, pushed her up the stairs, and threw her on the bed, yelling at her that he could "punch" her. According to Strache, that incident caused her to fear for her life on the day in question.

At the close of the evidence, the jury was given the charge, which included a self-defense instruction. In one issue on appeal, Strache argues that the trial court erred in precluding her from testifying about Walter's PTSD in support of her claim of self-defense. The State, on the other hand, argues that Strache did not preserve error and even if she had preserved error, she was in fact allowed to adequately present her self-defense claim.

## STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990); *Harris v. State*, 152 S.W.3d 786, 793 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). A trial court is given wide latitude in its decision to admit or exclude evidence. *Harris*, 152 S.W.3d at 793. Unless the trial court's evidentiary ruling falls outside the zone of reasonable disagreement, we may not disturb it. *Id.*

Further, to preserve a complaint for appellate review, a party must present to the trial court a timely, specific request, objection, or motion, and obtain a ruling. TEX. R. APP. P. 33.1(a); *Wright v. State*, 374 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). To preserve error with regard to exclusion of evidence, a defendant must inform the trial court of the substance of the evidence to be admitted and the legal grounds for the admission of the evidence.

*Willover v. State*, 70 S.W.3d 841, 845 & n.4 (Tex. Crim. App. 2002). If the trial court excludes evidence, the defendant must offer proof of the proposed evidence unless the substance of the evidence is apparent from the context. *Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999). Thus, an offer of proof is not required when counsel seeking admission of the evidence describes the evidence to the trial court or when the content of the evidence is apparent from the context. *Fairow v. State*, 943 S.W.2d 895, 897 n.2 (Tex. Crim. App. 1997).

Here, the record shows that the State urged a motion in limine "to keep out, in part, [Walter's] post-traumatic stress disorder." The State argued that the defense could talk about Walter having PTSD, but could not, without expert medical testimony, testify that Walter's actions were caused by PTSD. The defense responded that because Strache and Walter were married, Strache knew Walter had been diagnosed with PTSD and that such testimony related to her state of mind at the time of the incident. In ruling on the State's motion in limine, the trial court stated the following:

> So I'm going to grant the State's Motion in Limine to the extent that the PTSD — she can mention that he's been diagnosed with and unless they open the door further, that's it. She can mention he suffers from it. She knows he suffers from it. You can question him if he's been diagnosed with PTSD, and that's as far as you're to go unless the State opens the door.

Defense counsel then stated, "But we will be allowed to talk about his behavior that day regardless of—" The court interrupted, "Of course. You can talk about anything that happened that morning that led up to this incident as long as both sides are available for examination."

Thus, it is clear from the record that the trial court's ruling on the motion in limine allowed testimony to the effect that Walter suffered from PTSD; however, it is also clear from the record that the trial court intended to exclude evidence that Walter's actions were a result of his PTSD diagnosis without expert medical testimony.

With regard to the State's argument that Strache waived her complaint on appeal, we find no waiver. During the State's presentation of its motion in limine, defense counsel made clear to the court that Strache's testimony regarding PTSD would be for the purpose of showing "past behaviors where [Walter] puts her in fear for her life [and] would lead to her belief of his actions that day, putting her in fear for her life." Throughout Strache's testimony, she mentioned that Walter had been diagnosed with PTSD; however, when she tried to elaborate, the court did not allow it. Although Strache might have made an offer of proof regarding how Walter's PTSD diagnosis related to her "belief of his actions that day," such an offer of proof was not necessary because counsel had made the court aware of the content of the testimony. *See Fairow*, 943 S.W.2d at 897 n.2.

With regard to the trial court's exclusion of PTSD testimony, the record reflects that Strache was permitted to testify that Walter suffered from PTSD. She was not, however, allowed to testify, without expert medical evidence, that Walter's PTSD caused his actions on the occasion in question. At trial, and now on appeal, Strache complains that she was not trying to prove that Walter's PTSD caused him to act as he did, but rather that her awareness of Walter's PTSD diagnosis caused her to fear for her own safety and to act in self-defense. In support of her argument, Strache cites *Ex parte Miller*, 330 S.W.3d 610, 618-19 (Tex. Crim. App. 2009), which explained that a defendant may offer reputation or opinion evidence of specific prior acts of violence by the victim to show the reasonableness of the defendant's claim of apprehension of danger from the victim.

A review of Strache's testimony shows that, although she was not allowed to testify in detail about Walter's diagnosis of PTSD, she nevertheless was allowed to testify not only that Walter was diagnosed with PTSD, but also that her knowledge of Walter's diagnosis, along with Walter's prior violent acts, led her to fear for her safety and to act in self-defense. When Strache

testified, she stated that on the occasion in question, she was afraid Walter might hurt her because "sometimes when he's really mad he'll explode." And, "if he explode[s], he would get violent or say something violent to [her] and this reminded [her] of a past incident." When asked how she had dealt with similar situations in the past, Strache stated, "He has PTSD. I know how to handle - -". The State interrupted Strache, objecting to relevance, and the trial court sustained the objection. Strache then testified, without objection, that Walter had been diagnosed with PTSD five years ago and that his PTSD was something they have had to live with. Strache also testified that she was afraid Walter was going to kill her based on her past experience with him. And, because she was in fear for her safety, she punched Walter to defend herself. Strache referred to the times that Walter gets angry and puts her in fear for her life as "episodes." When asked if she attributed his moods to PTSD, the State objected, and the court indicated that Strache could not testify that his moods were caused by PTSD, to which defense stated, "All right. Well, then I'll leave that out." Strache did testify that when Walter had these episodes, he would turn into a different man, as if he was at war fending for his life. And when this happened, she was afraid for her own safety. Strache also testified about a prior incident that occurred on Easter when Walter pushed her up the stairs, threw her on the bed, and threatened to punch her. And because of that previous episode, she feared for her safety during the incident in question.

Under these circumstances, we hold Strache was allowed to adequately present her claim of self-defense due to her knowledge of Walter's PTSD. Thus, we affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish