Affirmed and Memorandum Opinion filed March 20, 2007








Affirmed and Memorandum Opinion filed March 20, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01172-CR

____________

 

DEREK HAGGERTY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 46966

 



 

M E M O R A N D U M   O P I N I O N








A jury found appellant Derek Haggerty guilty of possession
of a prohibited substance in a correctional facility.  See Tex. Penal Code Ann. ' 38.11(d) (Vernon
Supp. 2005).  Appellant pled Atrue@ to the
enhancement allegations, and the jury assessed punishment at fifteen years= confinement in
the Texas Department of Criminal Justice, Institutional Division, to run
consecutively with the sentence imposed in Cause Number F-9501589-PI out of
Dallas County for aggravated robbery, and a fine of $10,000.  In his first
point of error, appellant contends the evidence is factually insufficient to
support the jury=s finding that he knowingly possessed
marijuana.  In his second point of error, appellant argues the trial court
abused its discretion by excluding the lay opinion testimony of Corey Taylor. 
We affirm.  

Factual and Procedural Background

On January 9, 2002, appellant was an inmate at the
Darrington Unit of the Texas Department of Criminal Justice.[1] 
Correctional officers Mullins and Mayberry were ordered to search the cell
occupied by appellant and his cell mate, Corey Taylor.[2] 
When the officers arrived at appellant=s cell, appellant
was seated at a desk near the rear of the cell, and Taylor was lying on a bed
near the entrance.  Taylor handed a Lays potato chip bag to appellant.  The potato
chip bag contained several small bags of marijuana, with a combined weight of
7.31 grams.  In plain sight, on top of the desk where appellant was sitting,
the officers found loose marijuana and a Ziplock bag containing more
marijuana.  The total weight of the marijuana found on the desk was 1.35
grams.  Taylor was searched and found to be in possession of 1.20 grams of
marijuana hidden in his clothing.  

Appellant and Taylor were both charged with possession of
marijuana in a correctional facility.  Appellant and Taylor were tried
separately, and each testified at the other=s trial.  Taylor=s case was tried
first.  

I.
Corey Taylor=s Trial








On June 10, 2004, appellant gave sworn testimony at Taylor=s trial wherein
appellant admitted he knowingly possessed all of the marijuana found in his
cell at the Darrington Unit on January 9, 2002, including the marijuana found
on Taylor=s person.[3] 
Appellant testified he intended to possess the marijuana and smoke it to
relieve stress.  Appellant testified Taylor had no knowledge of the marijuana
and never intended to possess it.  Appellant further testified he tried to
flush the potato chip bag down the toilet when the officers entered his cell,
but was prevented from doing so by Mayberry.  A jury found Taylor not guilty.
Appellant=s testimony at Taylor=s trial was
subsequently admitted into evidence at appellant=s trial and
published to the jury.  

II.
Appellant=s Trial

Appellant=s case came to trial on August 15, 2005. 
Officer Mullins testified that when he and Mayberry initiated the search of
appellant=s cell, appellant was seated at the desk at the rear
of the cell, and Taylor was lying on a bunk bed near the entrance.   When the
officers tried to enter the cell, Taylor blocked the doorway and handed a
potato chip bag to appellant.  Mullins testified that after appellant received
the potato chip bag, appellant attempted to flush the contents of the bag down
the toilet.  Appellant turned his back on the officers, stooped over the
toilet, and attempted to unfold the bag.  Mullins testified he quickly entered
the cell and positioned himself between appellant and the toilet. Mayberry
removed Taylor from the cell and searched him.  Appellant surrendered the
potato chip bag to the officers.  Mullins further testified that after he and
Mayberry opened the potato chip bag and discovered its contents, appellant
offered the officers a monetary bribe to Aturn the other
cheek.@








Correctional Officer Ernest Rodriguez testified he arrived
at appellant=s cell after Mayberry and Mullins began their search. 
Rodriguez testified that when he arrived, appellant and Mullins were inside of
the cell and appellant was holding the potato chip bag in his hand.  Taylor
exited the cell and was searched by Mayberry.  Rodriguez testified appellant
initially refused to exit the cell; however, after repeated instructions from
the officers, appellant came out of the cell and submitted to a search of his
person.  Rodriguez further testified that the officers found marijuana in the
potato chip bag recovered from appellant and on top of the desk in appellant=s cell.  

Taylor testified that all of the marijuana found in his
cell on January 9, 2002  belonged to him, and appellant had no knowledge of the
marijuana.  Contrary to the testimony of Officer Mullins, Taylor testified he
was sitting at the desk near the rear of the cell and appellant was sleeping on
the bunk when the officers arrived.  Taylor testified he did not hand the
potato chip bag to appellant.  Rather, the bag was lying near the corner of
appellant=s bunk and, when Taylor stood up from his seat, the
bag Ajust flipped right
up@ to appellant. 
Thereafter, appellant Ajust grabbed the bag@ and stood up. 
Taylor also testified  appellant could not have known what was in the bag
because Taylor glued it shut.  Taylor further testified he is a high-ranking
member of the Crips street gang, and the Crips have rules which require gang
members to protect each other from prosecution. 

Mike Holm, an investigator for the Special Prosecution
Unit, testified that on the day prior to Taylor=s testimony in the
instant case, Taylor told Holm that the marijuana belonged to appellant.  Phil
Hall, a prosecutor for the Special Prosecution Unit, testified he tried Taylor
for this same offense, and appellant testified in Taylor=s trial that the
marijuana belonged to appellant.  A transcript of appellant=s testimony in
Taylor=s trial, discussed
supra, was introduced into evidence and published to the jury.  








Appellant testified he was asleep in his bunk when Mullins
and Mayberry entered his cell, and he had no knowledge about the presence of
marijuana in the cell.  Appellant testified Taylor was seated at the desk when
the cell door was opened.  Contrary to Taylor=s testimony,
appellant testified Taylor handed appellant the potato chip bag and instructed
appellant to take it. Appellant further testified he was obligated to follow
Taylor=s instructions
because appellant was Ariding with the Crips,@[4] and Taylor was a
Crips member.  Appellant testified he believed the potato chip bag contained
bleach, which was used by inmates to clean their cells.  

Appellant testified he was coerced by members of the Crips
gang to give false testimony at Taylor=s trial. 
Appellant told the jury that four Crips members armed with knives came into his
cell and gave him a piece of paper describing what he was supposed to say at
Taylor=s trial. 
Appellant further testified that he was lying when he testified at Taylor=s trial and
claimed responsibility for the marijuana.  Appellant testified he did not
intend to possess marijuana on January 9, 2002; he did not know what was in the
potato chip bag; and he did not attempt to flush the contents of the bag down
the toilet.  Appellant also testified that he denied responsibility for the
marijuana when he testified at his disciplinary hearing at the Darrington Unit.


The jury found appellant guilty and assessed punishment at
fifteen years= confinement in the Texas Department of Criminal
Justice, Institutional Division, and a $10,000 fine.  This appeal followed.

Discussion

I.
Factual Sufficiency








In his first issue, appellant contends there is factually
insufficient evidence to sustain the jury=s verdict that
appellant intended to possess or had knowledge he was in possession of
marijuana.  Our factual
sufficiency review begins with the presumption that the evidence supporting the
judgment is legally sufficient. Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996).  In a factual sufficiency review, we consider all the
evidence in a neutral light.  Prible v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  Id.  First,
when considered by itself, evidence supporting the verdict may be so weak the
verdict is clearly wrong and manifestly unjust.  Id.  Second, where the
evidence both supports and contradicts the verdict, the contrary evidence may
be strong enough that the beyond-a-reasonable-doubt standard could not have
been met.  Id.  In conducting a factual sufficiency review, we must
employ appropriate deference so that we do not substitute our judgment for that
of the fact finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim.
App. 1996).  Our analysis must consider the evidence appellant claims is most
important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 

Appellant does not deny that he possessed marijuana in a
correctional facility.   Rather, appellant contends the evidence is factually
insufficient to establish the mens rea element of the offense. 
Appellant was convicted under section 38.11 of the Texas Penal Code, wherein A[a] person commits
an offense if the person possesses a controlled substance or dangerous drug
while . . . in a correctional facility.@  Tex. Penal Code Ann. ' 38.11(d).  A
person commits an offense only if he voluntarily engages in conduct, including
possession.  Tex. Penal Code Ann.
' 6.01(a) (Vernon
2003).  Possession is a voluntary act if the possessor knowingly obtains or
receives the thing possessed or is aware of his control of the thing for a
sufficient time to permit him to terminate his control.  Id. ' 6.01(b).   

We have reviewed the entire record for evidence supporting
the jury=s verdict that
appellant knowingly possessed marijuana in a correctional facility.  This evidence,
set out in the Factual and Procedural Background section above, is not so weak
that the verdict is clearly wrong and manifestly unjust. See Prible, 175 S.W.3d at 730B31.     

The only evidence presented at trial directly refuting the
State=s case is the
testimony of appellant and Taylor.  Appellant asserts that the record contains
overwhelming evidence that he was compelled to give false testimony at Taylor=s trial. 
Appellant further argues that, aside from his testimony at Taylor=s trial, he has
consistently denied the State=s claim that he knowingly possessed
marijuana.  Therefore, appellant contends, the testimony of appellant and
Taylor provides overwhelming evidence which is contrary to the verdict.  








The testimony of Appellant and Taylor is directly contradicted
by the testimony of correctional officers Mayberry and Rodriguez, as well as
appellant=s own testimony at Taylor=s trial.  The jury
is the sole judge of the credibility of the witnesses and the weight to be
given to their testimony. Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim.
App. 2000).  Resolution of any conflicts in the evidence falls within the
exclusive province of the jury.  Id.  The jury was free to disbelieve
the testimony of appellant and Taylor, and chose to do so.  See id. 
Based on our review of the record as a whole, we cannot say that the contrary evidence is so strong that
the beyond-a-reasonable-doubt standard could not have been met.  See Prible,
175 S.W.3d at 730B31. 

The verdict is neither clearly wrong and manifestly unjust,
nor is the contrary
evidence so strong that the beyond-a-reasonable-doubt standard could not have
been met. Rather, the verdict reflects the jury=s decision to
believe some of the witnesses and not others, which is its role.  The evidence
is not factually insufficient.  Appellant=s first issue is
overruled.

II.
Lay Opinion Testimony 








In his second issue, appellant argues the trial court erred
in excluding the lay opinion testimony of Corey Taylor.  Appellant attempted to
introduce testimony regarding Taylor=s opinion that the
Crips gang members at Darrington would have threatened appellant and compelled
appellant to give false testimony at Taylor=s trial.[5] 
The State objected on the grounds of speculation and hearsay, and the trial
court sustained the State=s objection.  Appellant contends that
because Taylor had knowledge of the rules and practices of the Crips gang,
which included protecting one another from prosecution, Taylor should have been
allowed to give an opinion as to whether Crips members would have followed the
mandates of their gang without orders from Taylor.  The State argues Taylor=s opinion
testimony was properly excluded because it was not based on his personal
knowledge or experience as required by Texas Rule of Evidence 701, and because
appellant failed to lay the proper predicate.  We agree with the State.

A trial court=s decision on the
admissibility of evidence is reviewed under an abuse of discretion standard.  McDonald
v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).  A trial court abuses
its discretion when its decision is so clearly wrong as to lie outside that
zone within which reasonable persons might disagree.  Id.

A lay witness can testify in the form of an opinion under
Rule 701 if the opinions or inferences are (a) rationally based on the
perception of the witness and (b) helpful to a clear understanding of the
testimony or the determination of a fact in issue.  Tex. R. Evid. 701; Osbourn v. State, 92 S.W.3d 531,
535 (Tex. Crim. App. 2002).  Perceptions refer to a witness=s interpretation
of information acquired through his or her own senses or experiences at the
time of the event (i.e., things the witness saw, heard, smelled, touched, felt,
or tasted).  Id.  Because Rule 701 requires the testimony to be based on
the witnesses=s perception, it is necessary that the witness
personally observed or experienced the events about which he is testifying.  Id. 
Thus, the witness=s testimony can include opinions, beliefs,
or inferences as long as they are drawn from his or her own experiences or
observations.  Id.  This also incorporates the personal knowledge
requirement of Rule 602 which states that a witness may not testify to a matter
unless he or she has personal knowledge of the matter.  Id.  The
proponent of lay-opinion testimony bears the burden of establishing that the
witness has personal knowledge of the events upon which his opinion is based.  Fairow
v, State, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997).  








Appellant sought to establish that he gave false testimony
at Taylor=s trial because he was coerced by members of the Crips
gang, of which Taylor is a leading member.   Taylor testified he has been a
Crips member since 1987 and is an Aoriginal gangster,@ the highest rank
within the Crips.  Taylor testified he created the rules governing the conduct
of Crips members incarcerated at the Darrington Unit, and those rules require
Crips members to protect one another from prosecution.  Taylor further
testified he did not personally threaten appellant or ask anyone else to
threaten appellant in order to influence appellant=s testimony at
Taylor=s trial.  During
appellant=s case in chief, Taylor gave the following testimony
in the presence of the jury:

[defense counsel]:
Are you familiar with the policies and the tendencies of the street gang Crips?

[Corey Taylor]: Yes, sir, I made the rules that pertain to
my Crip set.

[defense counsel]: Is one of those rules for the Crips to
protect one another?

[Corey Taylor]: Yes, sir.

[defense counsel]:
How serious or strong of a rule is that? How seriously do y=all take that?

[Corey Taylor]: Very seriously, sir.

[defense counsel]:
Would that include protecting one another from prosecution?

[Corey Taylor]: Yes, sir.

[defense counsel]:
Is that a rule that requires a command that it be followed each time, or is it
one that=s generally
understood all the time?

[Corey Taylor]: It=s not a B it=s not B it=s just part of an
oath.  It=s just, like, it=s part of being a
Crip.

[defense counsel]:
Do you have an opinion as to whether or not the other Crips at Darrington would
have taken it upon themselves to protect you from prosecution by threatening
Mr. Haggerty?

[Corey Taylor]: Yes, sir.








[counsel for the
State]: Your Honor, I=m going to object to speculation and
hearsay.

[The Court]: I believe the answer was, yes, is that
correct, Madam Reporter?

[The Court Reporter]: Yes, sir.

[The Court]: The objection=s sustained.  

In his brief, appellant contends that ATaylor=s opinion was
based on long running perceptions as a gang leader.  Taylor made the rules and
had ample time to perceive how they were being carried out.@  Taylor testified
at appellant=s trial that the Crips= rules were Apart of an oath@ and were taken Avery seriously.@  However, Taylor
did not testify he had personal knowledge of the Crips members at Darrington
actually following the gang=s rules.  In fact, Taylor did not testify
he had personal knowledge of any specific prior instances of Crips members
threatening a witness to protect another gang member from prosecution. 
Therefore,  Taylor=s opinion testimony was not based on his
perceptions; rather, it was based on his speculative conclusions regarding what
the Crips gang members would have done to protect him from prosecution. 
Accordingly, we hold that Rule 701 is not met by Taylor=s testimony and
the trial court did not abuse its discretion in sustaining the State=s objection. 
Appellant=s second issue is overruled.

Conclusion

Having overruled both of appellant=s issues, we
affirm the judgment of the trial court.

 

 

/s/      John S. Anderson

Justice

 

 

Judgment rendered
and Opinion filed March 20, 2007.

Panel consists of
Justices Anderson, Hudson, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  On March 7, 1995, appellant was convicted of capital
murder and sentenced to incarceration for life.  On August 3, 1995, appellant
was convicted of aggravated robbery and sentenced to twenty-five years= incarceration.  





[2]  In 1990, Corey Taylor was convicted of theft of
property and unauthorized use of a motor vehicle and sentenced to eight years= incarceration.  In 1991, Corey Taylor was convicted
of two aggravated robberies and received separate sentences of twenty-five
years= incarceration and sixty years= incarceration. 





[3]  During his testimony at Taylor=s trial, appellant also testified that he gave false
testimony at an internal disciplinary hearing at the Darrington Unit. During
the disciplinary hearing, appellant testified Taylor gave him the potato chip
bag, but appellant did not know what was inside the bag.  At Taylor=s trial, appellant testified he knowingly possessed
all of the marijuana found in his cell, and that his testimony at the prison
disciplinary hearing was false.  





[4]  Appellant testified that Ariding with the Crips@ means Crips members Ajust gang up on
you and kind of impose themselves on you.@ 





[5]  Appellant sought to establish that he lied during
his testimony at Taylor=s trial, wherein appellant testified he knowingly
possessed marijuana in his cell at the Darrington Unit on January 9, 2002. 
Appellant=s testimony at Taylor=s trial was admitted into evidence at appellant=s trial.